```
                          UNITED STATES DISTRICT COURT
                           DISTRICT OF MASSACHUSETTS


_____
                                    )
WD ENCORE SOFTWARE, LLC,            )
                                    )
          Plaintiff,                )
                                    )
     v.                             )    CIVIL ACTION
                                    )    NO. 16-11490-WGY
THE SOFTWARE MACKIEV COMPANY,       )
                                    )
          Defendant,                )
                                    )
and                                 )
                                    )
HOUGHTON MIFFLIN HARCOURT           )
PUBLISHING COMPANY and HMH IP       )
COMPANY UNLIMITED COMPANY,          )
                                    )
          Nominal Defendants.       )
                                    )
_____ )
                                    )
HOUGHTON MIFFLIN HARCOURT           )
PUBLISHING COMPANY and HMH IP       )
COMPANY UNLIMITED COMPANY,          )
                                    )
          Cross-Claim Plaintiffs,   )
                                    )
     v.                             )
                                    )
THE SOFTWARE MACKIEV COMPANY,       )
                                    )
          Cross-Claim Defendant.    )
                                    )
_____ )
```

YOUNG, D.J.                                              August 3, 2017

**MEMORANDUM & ORDER**

**I.   INTRODUCTION**

In this action for trademark infringement and false designation of origin under the Lanham Act, WD Encore Software, LLC ("WD Encore") sued The Software MacKiev Company ("MacKiev") for unauthorized use of trademarks relating to certain software products. WD Encore moved for partial summary judgment on its trademark infringement claim, as well as on MacKiev's counterclaim for quantum meruit. After denying WD Encore's motion on its trademark infringement claim from the bench, this Court now denies summary judgment as to MacKiev's counterclaim for quantum meruit.

**A.   Procedural History**

WD Encore filed a complaint against MacKiev on September 18, 2015, in the Western District of New York, seeking injunctive relief and damages for trademark infringement. Compl. 1, ECF No. 1. MacKiev moved to dismiss the complaint. Notice of Mot., ECF No. 6. The case was instead transferred to the District of Massachusetts, ECF No. 14, where MacKiev renewed its motion to dismiss, The Software MacKiev Company's Renewed Mot. Dismiss WD Encore Software, LLC's Compl., ECF No. 25. After a hearing on September 13, 2016, this Court denied MacKiev's motion. Electronic Clerk's Notes, ECF No. 36.

The Amended Complaint includes three counts: federal trademark infringement under 15 U.S.C. § 1114 (count I), false designation of origin under 15 U.S.C. § 1125(a)(1)(A) (count II), and unfair competition under New York law (count III). Am. Compl. ¶¶ 34-50. In response, MacKiev asserted eight affirmative defenses, and also filed counterclaims for: implied contract/quantum meruit (count I), false designation of origin under 15 U.S.C. § 1125(a)(1)(A) (count II), unfair competition under Massachusetts law (count III), and violation of M.G.L. ch. 93A (count IV). Def. Software MacKiev Co.'s Answer Am. Compl., Affirmative Defenses, and Countercls. ("Answer"), ECF No. 47.

WD Encore has now filed a motion for partial summary judgment on: 1) liability on WD Encore's trademark infringement claim and 2) MacKiev's counterclaim against WD Encore alleging quantum meruit/implied contract. Mot. Pl. WD Encore Software, LLC Partial Summ. J., ECF No. 71. The parties have briefed the issues and submitted accompanying statements of fact. Pl.'s Mem. Law Supp. Mot. Partial Summ. J. ("Pl.'s Mem."), ECF No. 72; Pl.'s Local Rule 56.1 Statement ("Pl.'s Facts"), ECF No. 73; Def. Software MacKiev Co.'s Mem. Law Supp. Opp'n WD Encore Software, LLC's Mot. Partial Summ. J. ("Def.'s Opp'n"), ECF No. 83; Def. Software MacKiev Co.'s Resp. Pl.'s Local Rule 56.1 Statement ("Def.'s Resp. Facts"), ECF No. 84. After a hearing, the Court denied WD Encore's motion as to the trademark

[3]

infringement claim, but took the quantum meruit claim under advisement. Electronic Clerk's Notes, ECF No. 92.

B. **Factual Background**

1. **The Parties**

WD Encore is a New York limited liability company with its principal place of business in Syracuse, New York. Am. Compl. ¶ 1; Answer ¶ 1. The company is a developer and wholesale and retail distributor of software products. Pl.'s Facts ¶ 1. From its formation in June 2014 to the present, WD Encore has been a wholly-owned subsidiary of WYNIT Distribution, LLC ("WYNIT"). Id. WD Encore came about as part of an Asset Purchase Agreement effective July 9, 2014 ("Asset Purchase Agreement"), between WYNIT and certain of its subsidiaries, including WD Encore, as buyers, and Speed Commerce, Inc. and certain of its subsidiaries, including Encore Software, Inc. ("ESI" or "Encore"[1]), as sellers. Id. ¶ 2. As part of the transaction, WD Encore acquired certain of ESI's assets, including specific licensing agreements between ESI and third parties. Id.

The Asset Purchase Agreement provides for the purchase of "substantially all of the assets used by the Sellers in connection with" certain aspects of the sellers' business, including the "manufacture, development, license or distribution

---

[1] The parties refer to the same entity as "ESI" and "Encore" in their briefs. This memorandum uses "ESI" throughout.

[4]

. . . of software products developed by [ESI] or licensed from Third Parties." Id. ¶ 3. It also provides that the buyers assume the liabilities specified in the "Assumed Liabilities" section, which include all liabilities under the enumerated "Assumed Contract," as well as other liabilities relating to taxes, trade payables, transferred employees, and other specified items. Id. The "Assumed Contracts" are set forth in an Assignment and Assumption Agreement effective July 9, 2014 ("Assignment and Assumption Agreement"). Id. ¶ 6. ESI was dissolved in March 2016. Id. ¶ 8.

MacKiev is a Nevada corporation with its principal place of business in Boston, Massachusetts. Am. Compl. ¶ 2; Answer ¶ 2. MacKiev is the owner and operator of the website www.mackiev.com and sells software products. Pl.'s Facts ¶ 25.

### 2. The Channel License Agreement

On July 1, 2008, Riverdeep, Inc., HMH Consumer Company, and ESI entered into a Channel License Agreement, which was amended from time to time, with the latest amendment (Amendment No. 5) dated July 2, 2013. Id. ¶ 10. Pursuant to the Assignment and Assumption Agreement, WD Encore became a licensee under the Channel License Agreement. Id. Houghton Mifflin Harcourt Publishing Company ("HMH") is the successor licensor to the Channel Licensing Agreement. HMH IP owns the federal trademark registrations for a number of trademarks related to software

(the "Broderbund Marks"): "The Print Shop Essentials," "The Print Shop," and "Mavis Beacon Teaches Typing!"  Id. ¶ 17.

Pursuant to section 3.1.1 of the Channel License Agreement, WD Encore has an exclusive, irrevocable, perpetual, sublicensable right and license to use the Broderbund Marks in "Authorized Channels" in the "Territory."  Id. ¶ 12.  The Channel License Agreement defines the "Territory" as the United States, Canada, and Mexico.  Id. ¶ 14.  Section 1.7 defines "Authorized Channels" as "any and all channels of distribution in the Territory other than the Schools Channel."  Id. ¶ 15. Section 1.98 defines the "Schools Channel" to mean "any and all education-related markets, including without limitation: (a) reseller networks to schools; (b) direct schools sales in the pre-kindergarten through 12th grade market; and (c) after school programs and learning centers, including delivery via schools-based or learning center-based web portals."  Id. ¶ 16.

### 3. The License and Distribution Agreement

MacKiev is a party to a License and Distribution Agreement with Riverdeep, Inc.  Id. ¶ 20.  HMH is the successor-in-interest to Riverdeep under the License and Distribution Agreement.  Id. ¶ 21.  Under the agreement, HMH gives MacKiev the rights to use the Broderbund Marks in the Schools Channel, defined as "any and all education related markets including

without limitation (i) reseller networks to schools and (ii) direct school sales in the preK-12 grade market." Id. ¶¶ 22-24.

The Second Amendment to the License and Distribution Agreement between MacKiev and Riverdeep, effective November 30, 2004, gave MacKiev the exclusive rights to create Mac OS X versions of The Print Shop and Mavis Beacon Teaches Typing. Def.'s Resp. Facts ¶¶ 2-3. This right was extended through each subsequent amendment, including the most recent Amendment No. 5, effective September 30, 2011. Id. ¶¶ 5-6. During the negotiations of Amendment No. 5, MacKiev was selling Mavis Beacon Teaches Typing in the Education Category of the Mac App Store and had been doing so since the opening day of the new store on January 6, 2011. Id. ¶ 7. Amendment No. 5 defines the School Channel and states that "MacKiev continues to have rights to all Channels worldwide except for those excluded in this Amendment or elsewhere in this Agreement." Id. ¶ 10. Therefore, under Amendment No. 5, MacKiev's North America rights would be limited to the Schools Channel, but it would retain its rights to all channels outside North America. Id.

### 4. 2012 The Print Shop Update[2]

In January 2012, ESI approached MacKiev to discuss collaborating on an update to The Print Shop software. Def.'s

---

[2] The following facts are taken from MacKiev's responsive statement of facts, to which WD Encore does not reply.

Resp. Facts ¶ 17. After MacKiev signed a nondisclosure, ESI provided a term sheet requesting that MacKiev build a new version of The Print Shop 3.5 for both parties to sell, and included terms on payment from sales revenue. Id. ¶ 19. MacKiev agreed to the terms by email on or around January 20, 2012. Id. By early February, MacKiev and ESI had both confirmed that MacKiev had begun work on the project. Id. ¶ 21. Work continued throughout 2012, and on November 20, 2012, MacKiev provided a Technical Brief for the finished Print Shop product, indicating that the software would be ready to be marketed ten days later. Id. ¶¶ 33-34. ESI then sent MacKiev a cease and desist letter at the end of November. Id. ¶ 35. ESI had previously published The Print Shop 3.5, which contained elements of MacKiev's work product in its design in September. Id. ¶ 37. MacKiev estimates that the value of the work provided to ESI was "approximately $484,000." Id. ¶ 36.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Mulloy v. Acushnet Co., 460 F.3d 141, 145 (1st Cir. 2006). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position."

Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990). If the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In reviewing motions for summary judgment, courts must resolve all disputed facts and inferences in favor of the non-moving party. See Seaboard Sur. Co. v. Town of Greenfield, 370 F.3d 215, 218-19 (1st Cir. 2004).

### B. Quantum Meruit/Implied Contract

"The underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party." Salamon v. Terra, 394 Mass. 857, 859 (1985). In Massachusetts, a claim for quantum meruit requires that: "(1) the plaintiff conferred a reasonable benefit upon the defendants; (2) defendants accepted the services with the reasonable expectation of compensating the plaintiff; and (3) the plaintiff provided the services with the reasonable expectation of receiving compensation." Backman v. Smirnov, 751 F. Supp. 2d 304, 314 (D. Mass. 2010) (Stearns, J.) (citations omitted). The crux of MacKiev's counterclaim is that WD Encore benefited from an implied contract between MacKiev and ESI, from which WD Encore acquired certain assets and liabilities pursuant to the Asset Purchase Agreement.

MacKiev argues that its quantum meruit claim survives summary judgment under two theories of successor liability. To begin, the parties do not dispute that the Asset Purchase Agreement under which WD Encore purchased the assets of ESI is governed by Delaware law, and therefore so too is the issue of successor liability. Delaware law provides that

> when one company sells or otherwise transfers all of its assets to another company, the buyer generally is not responsible for the seller's liabilities, including claims arising out of the seller's tortuous conduct. In limited situations, where avoidance of liability would be unjust, exceptions may apply to enable the transfer of liability to the seller. These exceptions include: (1) the buyer's assumption of liability; (2) de facto merger or consolidation; (3) mere continuation of the predecessor under a different name; or (4) fraud.

Magnolia's at Bethany, LLC v. Artesian Consulting Eng'rs, Inc., C.A. No. S11 C-04-013-ESB, 2011 WL 4826106, at *2 (Del. Super. Ct. Sept. 19, 2011); see also Ross v. Desa Holdings Corp., C.A. No. 05C-05-013 MMJ, 2008 WL 4899226, at *4 (Del. Super Ct. Sept. 30, 2008). WD Encore maintains that MacKiev's claim fails as matter of law because none of the above exceptions applies. Pl.'s Mem. 16-17.

Under its first theory of successor liability, MacKiev asserts that WD Encore assumed liability under ESI's contract with MacKiev. Def.'s Opp'n 12. MacKiev first points to the fact that "pursuant to its rights under the Channel License Agreement, [ESI] entered into the implied contract with MacKiev

for revisions to The Print Shop." Id. MacKiev contends that by entering into the Assignment and Assumption Agreement, WD Encore either expressly or impliedly assumed ESI's liabilities relating to revisions to The Print Shop software. Id. WD Encore correctly notes, however, that it only agreed to assume the specified "Assumed Liabilities" set forth in Section 2.4 of the Asset Purchase Agreement, which make no mention of any liabilities to or contracts with MacKiev. Pl.'s Mem. 17.

In support, MacKiev cites a number of cases applying Delaware law. These cases, however, are inapposite. Indeed, they simply restate the principle articulated in Magnolia's and Ross: that there are four exceptions to the general rule that a purchaser of assets does not assume liabilities. Each of these cases applies one of the specific exceptions. See Mason v. Network of Wilmington, Inc., No. Civ.A. 19434-NC, 2005 WL 1653954, at *5 (Del. Ch. July 1, 2005) (rejecting successor liability theory because of "significant separation" between old and new businesses); Corporate Prop. Assocs. 8, L.P. v. Amersig Graphics, Inc., Civ. A. No. 13241, 1994 WL 148269, at *4-5 (Del. Ch. Mar. 31, 1994) (applying Pennsylvania law and finding de facto merger theory of successor liability adequately plead); AJZN, Inc. v. Yu, No. 13-149 GMS, 2015 WL 331937, at *15-16 (D. Del. Jan. 26, 2015) (allegations sufficient to assert successor liability under a continuation theory). MacKiev's conclusory

statement that "WD Encore should not be allowed to reap the benefits of the Channel Licensing Agreement, including MacKiev's work on The Print Shop, without also being held to have expressly, or at least impliedly, assumed the burdens that derive from those alleged rights," Def.'s Opp'n 13, fails to show how any of the four specific exceptions applies.

MacKiev's second theory of successor liability is framed under the fraud exception,[3] but sounds in the "continuation" exception. WD Encore argues that it is not a mere continuation of ESI because "[t]he 'primary elements' of being the same legal entity have been said to include the common identity of the officers, directors, or stockholders of the predecessor and successor corporations, and the existence of only one corporation at the completion of the transfer." Spring Real Estate, LLC v. Echo/RT Holdings, LLC, C.A. No. 7994-VCN, 2013 WL 6916277, at *5 (Del. Ch. Dec. 31, 2013). It is undisputed that

---

[3] Although WD Encore argues that "MacKiev does not allege any fraud with WD Encore's purchase of ESI's assets," Pl.'s Mem. 18, MacKiev specifically noted that because at the time of the filing of its answer and counterclaims, WD Encore had not supplied the Channel License Agreement or Assignment and Assumption Agreement on which its claims were based, MacKiev "reserve[d] its right upon HMH's appearance, review of HMH's responsive pleading, and review of the Agreements and discovery concerning them to assert additional counterclaims against WD Encore and cross-claims against HMH, including, without limitation, breach of contract, fraud, and/or civil conspiracy, depending on what is revealed that WD Encore and HMH have heretofore concealed." Answer 1 n.1.

WD Encore and ESI have not had common directors or shareholders, Pl.'s Facts ¶¶ 7-8, but the case law also contemplates common officers. MacKiev asserts that a number of key ESI employees subsequently worked at WD Encore immediately after the acquisition, including the VP of Business Development, President, Director of R&D, In-house Counsel, and Quality Assurance Manager. Def.'s Opp'n 14; Def.'s Resp. Facts ¶ 39. MacKiev adds that WD Encore is located in Minneapolis, where ESI was based, and all internal correspondence WD Encore produced in this litigation were ESI documents. Def.'s Resp. Facts ¶¶ 40-43. Viewing the facts in the light most favorable to MacKiev, there are genuine issues of material fact concerning whether MacKiev can recover in quantum meruit for its work on The Print Shop software under a successor liability theory.[4]

---

[4] MacKiev also advances a third party beneficiary theory, arguing that "an action for unjust enrichment may be sustained when a third person benefits from a contract between two other parties." Southboro Med. Grp. v. Nelson, No. 002090A, 2001 WL 293089, at *1 (Mass. Super Ct. Feb. 26, 2001) (citing Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co., 534 F. Supp. 340, 347 (D. Mass. 1982)). The rule in Taylor, however, specifically applies to unjust enrichment claims, and it is unclear whether a third party quantum meruit claim is available under Massachusetts law. Because MacKiev has provided no case law supporting such a theory, and this Court has found that there are sufficient issues of fact to withstand summary judgment on a successor liability theory, the Court declines to address the availability of recovery under a third party theory.

## III. CONCLUSION

Accordingly, this Court denies summary judgment on MacKiev's first counterclaim.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE